DWAYNE GLOWNER,

    Plaintiff,

    v.                          Civil No. 8:09-cv-01768-EAK-TGW

MULLER-MARTINI
MAILROOM SYSTEMS, INC.,

    Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION TO STRIKE, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Defendant's Counterclaim of Invalidity for Lack of Enablement (Doc. 33), Plaintiff's Motion to Strike the Expert Report of Robert Erbstein (Doc. 34), Defendant's Motions for Summary Judgment of Non-Infringement (Doc. 35) and Patent Invalidity (Doc. 38), and the various responses thereto (Docs. 43, 44, 45, 46). For the reasons set forth below, Plaintiff's Motion to Strike, Plaintiff's Motion for Partial Summary Judgment, and Defendant's Motions for Summary Judgment of Non-Infringement and of Patent Invalidity are **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

The following facts are gleaned from the motions currently before this Court, and the Court recognizes them as "facts" only with regard to resolution of the particular motions at issue.

Plaintiff, Dwayne Glowner ("Glowner"), patentee of United States Patent No. 6,755,412 B1 (the "'412 Patent"), sued Defendant, Muller-Martini Mailroom Systems, Inc. ("MMMS"), for infringement on August 28, 2009. Glowner accuses MMMS of infringing Claims 1, 9, and 17 of

the '412 Patent by making, using, selling, and offering to sell its SLS 3000 XL inserter machine, which includes a high-speed insert feeding assembly, the Universal Feeder ("XL Feeder"). MMMS counterclaimed for non-infringement, invalidity, and bad faith. Doc. 13.

The patent-in-suit discloses a "High Speed Overlapping Insert Feeding Assembly" for use in preparing newspapers for distribution. Doc. 1, Ex. A. The invention facilitates the feeding of "inserts" (such as coupon booklets, advertising sheets, etc.) into newspapers. It was designed to provide an insert feeding assembly that can feed crumpled inserts without jamming, to feed inserts having different thicknesses without adjusting suction level, and, perhaps most important, to operate at printing press speed. '412 Patent, col. 2, ll.33–37. The invention is also designed to be easier to operate, comprise fewer parts, require less greasing during operation, and be less sensitive to timing errors than those insert feeding assemblies preexisting it. '412 Patent, col. 2, ll.38–40. It consists of an insert supporting assembly for supporting a stack of inserts, a converting assembly for converting the stack of inserts into an overlapping stream of inserts, a conveying assembly for moving the overlapping stream of inserts through the feeding assembly, and an overlapping stream separating and ejecting assembly for separating inserts from the overlapping stream and ejecting them out of the feeding assembly and into the pockets of the newspapers. '412 Patent, col. 2, ll.44–56.

The '412 Patent provides only one preferred embodiment of the invention, but cautions that this embodiment "is not intended [to] be construed as [a] limitation[] upon the scope of the invention as set forth in" the claims of the patent. '412 Patent, col. 9, ll.16–21. Glowner asserts three independent claims against MMMS in this case: Claims 1, 9, and 17. Claim 1 of the '412 Patent exemplifies the asserted claims:

1. An insert feeding assembly, comprising:

supporting means for supporting a stack of inserts;

converting means for converting the stack of inserts into an overlapping stream of inserts with a lap roller assembly that guides each insert down into the overlapping stream of inserts;

conveying means for conveying the overlapping stream through the feeding assembly; and

overlapping stream separating and ejecting means for separating individual inserts from the overlapping stream of inserts and for ejecting separated individual inserts from the feeding assembly.

'412 Patent, col. 9, ll.23–35.

Glowner began selling feeder machines in 2004, and approached MMMS about licensing or purchasing the technology; MMMS declined. Doc. 43. MMMS subsequently developed and brought to market its own inserter machine, the SLS 3000 XL, and it is this machine that forms the basis for Glowner's infringement allegations and, accordingly, the instant suit.

Both parties submitted expert reports: Glowner produced the report of Dr. William S. Howard (the "Howard Report"), Doc. 33, Ex. C, and MMMS entered the report of Mr. Robert Erbstein ("Erbstein Report" or "Report"), Doc. 34, Ex. A. Glowner then moved to strike the Erbstein Report (Doc. 34), and for partial summary judgment as to MMMS' counterclaim of invalidity for lack of enablement (Doc. 33). MMMS subsequently moved for summary judgment of non-infringement (Doc. 35) and of patent invalidity (Doc. 38).

Because resolution of the various motions for summary judgment hinges on the outcome of Glowner's Motion to Strike the Erbstein Report (Doc. 34), the Court will begin its discussion there and, upon disposition of the Motion to Strike, turn its attention to the dispositive motions at issue. *See Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1364 (Fed. Cir. 2011).

## Plaintiff's Motion to Strike the Erbstein Report

Plaintiff moves to strike the expert report of Robert Erbstein for failure to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Rule 26(a)(2)(B) provides that an expert witness's report must contain "a complete statement of all opinions and to be expressed and the reasons therefor," as well as "the facts or data considered by the witness in forming" those opinions. Expert reports can be stricken if they "offer conclusory opinions" and do not "contain some discussion of [the expert's] reasoning and [the] thought process that lead to the[] ultimate opinions." *Elder v. Tanner*, 205 F.R.D. 190, 193 (E.D. Tex. 2001); *see STS Software Sys., Ltd.*, No. 1:04-CV-2111-RWS, 2008 WL 660324, at *2 (N.D. Ga. Mar. 6, 2008 ) (striking expert report that "stated hundreds of unsupported conclusory opinions" and contained "a summary of prior art references, claims charts containing quotes excerpted from these references, and a conclusion that a combination of references renders the patent claims obvious"); *Dataquill Ltd. v. Handspring, Inc.*, No. 01 C 4635, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003) (striking expert report for failure to comply with Rule 26(a)(2)(B)). The decision to strike an expert report is within the sound discretion of the trial judge. Glowner claims that the Erbstein Report fails to disclose the basis of Mr. Erbstein's opinions, and that it must therefore be stricken. Doc. 34.

The Erbstein Report begins with an introductory section setting forth Mr. Erbstein's qualifications. Mr. Erbstein notes that in preparing the Report, he reviewed "all documents referred to in this report, including" the '412 Patent, its file history, and any prior art cited therein or otherwise referred to throughout the Report. The Report then surveys Mr. Erbstein's understanding of the '412 Patent and the XL Feeder, before proceeding to explain why the XL Feeder does not infringe the '412 Patent, either literally or under the doctrine of equivalents, and why the '412 Patent itself is invalid for lack of novelty and enablement. Throughout various

4

portions of the Report, Erbstein cites to his own attached exhibits, provided in table format, in which he compares the '412 Patent to prior art or the XL Feeder. An example of these exhibits is Exhibit D to the Erbstein Report, which purports to explain why the '412 Patent is invalid based on prior art and compares the '412 Patent to various other patents, including U.S. Patent No. 3,741,535 to Palkovic (the "Palkovic Patent"). The exhibit consists of a table listing the limitations of the '412 Patent and comparing them to the Palkovic Patent:

| Claims as Issued | Prior Art<br>Palkovic U.S. Patent No. 3,741,535 |
|---|---|
| **Claim 1** | |
| 1.  An insert feeding assembly, comprising: | Insert feeding assembly |
| supporting means for supporting a stack of inserts; | supporting means for supporting a stack of inserts (16) |
| converting means for converting the stack of inserts into an overlapping stream of inserts with a lap roller assembly that guides each insert down into the overlapping stream of inserts; | converting means (suction arm 50) for converting the stack of inserts (16) into an overlapping stream of inserts with a lap roller assembly (42, 44) that guides each insert down into the overlapping stream of inserts (See col. 10, lines 28 – 32); |

The numbers in the right column of the above excerpt ostensibly refer to figure numbers from the patent being discussed.

The Court agrees that the portions of the Erbstein Report similar to the excerpt quoted above will be only marginally helpful to the trier of fact. But the Report itself is lengthy, and other portions, such as Mr. Erbstein's description of the XL Feeder itself and the various sections of the discussion regarding Mr. Erbstein's opinion that the XL Feeder does not infringe the '412 Patent, among others, are provided with more than a sufficient basis, and may well be helpful to the trier of fact. Moreover, it does not inexorably follow from the fact that certain portions of the Report are lacking that the entire Report must be stricken.

5

The Court agrees that various portions of the Erbstein Report merely "restate[ the] position" of MMMS with regard to infringement and invalidity of the '412 Patent. *SRI Intern., Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008). And on summary judgment, this Court will not give credence to those portions of the Report, or to statements in the Report that seem to merely rehash MMMS' legal arguments. "The [C]ourt, however, can do that on a fact-by-fact basis as necessary without wholesale throwing out of all of [the Expert Report]." *Zenith Elec. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1357 n.3 (Fed. Cir. 2008) (quoting and affirming the district court's decision below). Indeed, the Erbstein Report also contains several helpful sections for which the basis is more than sufficiently disclosed, and the Court is mindful that, at least when confronted with subtle questions such as these, it must "take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms." *Cf. Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990).

We deal here with a mouse, and the Court accordingly declines to exercise its discretion to strike the entire expert report. Rather, and in order to wield a precise tool specifically tailored to the task at hand, this Court will assess the probative value of the various sections of the Erbstein Report on an ad hoc basis as the need for them arises, giving no credence to those portions that are not helpful, while taking at fair value those that are. The Motion to Strike the Expert Report of Mr. Robert Erbstein (Doc. 34) is denied.

## Motions for Summary Judgment

The parties cross-move for summary judgment as to invalidity for lack of enablement (Docs. 33, 38), and MMMS has additionally moved for summary judgment of non-infringement (Doc. 35) and of invalidity for lack of novelty (Doc. 38).

6

## Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,323-324 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has met this initial burden, the nonmoving party must then designate specific facts showing that there exists some genuine issue of material fact in order to defeat summary judgment. *Id.* at 324.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). In determining whether a material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983). If the determination of the case rests on which competing version of the facts is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983).

7

## Claim Construction

Because the first step of both the infringement and invalidity analyses requires the Court to determine the proper scope of the asserted claims, our analysis begins there. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1333 (Fed. Cir. 2002).

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352 (Fed. Cir. 2004); *see Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004). However, "the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and . . . patentees frequently use terms idiosyncratically." *Philips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). In addition to the words of the claim, "the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art" are often useful in divining the proper scope of the claims at issue. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1116 (Fed Cir. 2004); *see Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."). And though "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification," the court can avoid this pitfall "if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Philips*, 415 F.3d at 1323.

In the instant case, the only disputed claim term is "overlapping stream." MMMS argues that an "overlapping stream" means inserts that (1) physically overlap, (2) contact one another,

and (3) are transported and move together in a stream through the feeding assembly. Doc. 35. According to MMMS, language from the specification describing the preferred embodiment supports its view that, in order to be in an overlapping stream, inserts must move together in constant contact, as with shingles or tiles. *See* '412 Patent, col. 6, ll. 24–25 ("One full rotation of the lap rollers 74 pulls and overlaps three inserts and feed[s] the overlapping inserts to the conveyor belt assembly."); '412 Patent, col. 7, ll. 32–35. MMMS further asserts that in the prosecution history of the '412 Patent, the examiner repeatedly referred to prior art that embraces its interpretation of overlapping stream, and that, by not objecting to the examiner's interpretation, Glowner acquiesced to such a definition.

Glowner, for his part, urges the Court to define an "overlapping stream" as a "stream for product that overlaps for at least part of the stream of motion." Doc. 43. He asserts that, in the newspaper printing and distribution industry, the term "overlapping" is used to describe the process of removing inserts from a stack of inserts more than one at a time—that is, pulling back the edge of one insert and moving it through the feeder and, before that first insert is completely removed, beginning to pull back the edge of a second or subsequent insert at the same time.

The Court is persuaded by neither party's proposed definition. MMMS, for example, suggests that inserts can only be in an "overlapping stream" when they are in contact with one another, but fails to disclose exactly why that result must follow from the language of the claims themselves. Though admittedly the preferred embodiment of the '412 Patent and its accompanying figures describe a mechanism whereby the inserts do contact one another while flowing along the overlapping stream, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that claim." *Philips*, 415 F.3d at 1323; *see Nazomi Commc'ns, Inc. v. ARM*

9

*Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) (noting that claims can extend to "different subject matter than is illustrated in the specific embodiments in the specification"). Thus, and though most of the time inserts moving in a steam will be in physical contact with one another, that characteristic is not a *necessary* condition of overlap. That makes good sense, too—even in everyday nomenclature, two items can be said to overlap if their ranges are coextensive or they are placed in a staggered format, and yet need not necessarily be touching. Under MMMS' crabbed interpretation, however, inserts could not be said to overlap unless they remained in constant contact. Apart from the preferred embodiment and a few instances of prior art in which the patents happened to include overlapping streams in which the articles remained in contact, MMMS provides no rationale for the contact element of its proposed definition. Put another way, MMMS attempts to transmute the characteristic of contact—a condition *sufficient* to create an overlapping stream—into a condition *necessary* for an overlapping stream. The Court declines to so restrict the term in the absence of claim language supporting that result.

But just as MMMS reads the term "overlapping stream" in the '412 Patent too narrowly, Glowner reads it too broadly. He claims that, so long as there is some period in which inserts overlap along their journey from the insert stack to the separating and ejecting mechanism, the entire path upon which they travel can be properly deemed an overlapping stream. The Court cannot agree. Though Glowner cites to his own deposition in addition to the testimony of a former MMMS executive, Randy Seidel, such extrinsic evidence is accorded no weight if it conflicts with the unambiguous definition of a claim term, as disclosed by the Court's review of the intrinsic evidence. *Vitrionics*, 90 F.3d at 1584. Even under the most charitable reading, there is nothing in the claim language, the specification, or the prosecution history to support Glowner's broad definition, and the Court refuses to provide it here by fiat.

10

Instead, the Court holds that the true definition of the disputed claim term in this case is somewhere in between the definitions proffered by the litigants. In the Court's view, a clear reading of the claims of the '412 Patent, its specification, and its file wrapper reveals that the term "overlapping stream" as used in the '412 Patent is properly construed to describe "inserts which (1) physically overlap and (2) move continuously through the feeding assembly." Such an interpretation is consistent with the plain language of the term as understood by those of ordinary skill in the art, as well as the specification and prosecution history. *See* '412 Patent, col. 4, ll. 26–29 ("Overlapping inserts reduces the amount of time required to feed a stack of inserts through the feeder and increases the effective feeding speed of the feeder."). It also avoids impermissibly restricting the plain language of the claim terms of the '412 Patent to its single preferred embodiment. *See, e.g., Teleflex*, 299 F.3d at 1328 (explaining that, in the absence of "clear statements" of limitation in the specification, the court is "constrained to follow the language of the claims, rather than that of the written description").

Finally, insofar as MMMS argues that *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.* requires the Court to adopt the narrower of two plausible claim interpretations where that narrow interpretation is enumerated in the claim specification, it is wrong. 73 F.2d 1573 (Fed. Cir. 1996). As Glowner keenly notes, the "unusual case" of *Athletic Alternatives* involved a patent applicant who "made two *contradictory* and *irreconcilable* affirmative representations of the contested limitation." *Housey Pharms., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1356 (Fed. Cir. 2004) (emphasis in original). That is not this case. There is no direct contradiction between the '412 Patent specification and its prosecution history, and the rule of *Athletic Alternatives* is thus inapposite to the case at bar.

Having ascertained the true meaning of the disputed claim term "overlapping stream," the Court can now proceed to examine the merits of the instant motions for summary judgment as to invalidity for lack of enablement, invalidity for lack of novelty, and non-infringement. The Court will address each in turn.

## Invalidity for Lack of Enablement

Both parties move for summary judgment as to '412 Patent's validity with regard to enablement. Doc. 33, 38. A patent specification must "contain a written description of the invention . . . to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112 (2006). In particular, the specification must "enable one of ordinary skill in the art to practice the claimed invention without undue experimentation." *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999). The issue of invalidity from lack of enablement under § 112 is a question of law based upon underlying issues of fact. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006). Because a patent is presumed valid pursuant to 35 U.S.C. § 282, the party seeking to invalidate the patent, here MMMS, has the burden of doing so by adducing clear and convincing evidence of the facts underlying the conclusion of invalidity. *Invitrogen Corp. V. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). Synthesizing that standard with the general Rule 56 summary judgment standard, MMMS "must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). With respect to Glowner's motion, and because he (unlike MMMS) does not bear the burden of proof on this issue at trial, summary judgment in his favor is proper if Glowner can demonstrate that MMMS "failed to produce clear and convincing evidence on an

essential element of a defense upon which a reasonable jury could invalidate the patent," which here is lack of enablement. *Id.*

"Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations . . . includ[ing] (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *see also ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (listing and applying the *Wands* factors).

In essence, both of the instant motions emanate from the requirement that the "full scope of the claimed invention . . . be enabled." *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007). Glowner claims that the XL Feeder infringes on his patent and is within the scope of the '412 Patent's claims. Seizing on the breadth of Glowner's claim, MMMS argues that the '412 Patent is invalid for lack of enablement because it does not teach a person of ordinary skill in the art how to arrive at the accused XL Feeder without undue experimentation. Doc. 38.

Some of the key differences between the XL Feeder and the assembly envisioned by the '412 Feeder are that the XL Feeder has a much shorter conveying assembly and an over-riding or one-way clutch that works with its pusher (referred to in the '412 Patent as a "lap roller"). The question of whether a person of ordinary skill in the art would be able to make the modifications necessary to implement the XL Feeder from the '412 Patent is alone a material question of fact that precludes summary judgment. *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. &*

*Research*, 346 F.3d 1051, 1055 (Fed. Cir. 2003) (noting that a considerable amount of experimentation is permissible, if it is routine or reasonable in light of the "nature of the invention and the state of the art"); *see also Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) ("A patent need not teach, and preferably omits, what is well known in the art.") The parties' motions (Docs. 33, 38) and the responses thereto (Docs. 44, 46) are laden with competing expert statements, deposition testimony, and other underlying factual issues that require credibility determinations and the weighing of evidence; such issues are for the factfinder, not this Court, and the present motions must accordingly fail. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1307 (Fed. Cir. 2010) (reversing summary judgment of patent invalidity for lack of enablement because "the parties heavily dispute whether the [modification] would be 'trivial,' or a much more complex task"). For example, on the issue of whether the addition of a one-way clutch would require undue experimentation, the parties offer competing expert testimony that is detailed in nature and more than sufficient to raise a genuine issue of material fact as to invalidity. *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) (noting that conclusory expert testimony, given by one not skilled in the art, does not raise triable issues of material fact on summary judgment). This is especially so in light of the extremely heavy burden that MMMS must meet to win a summary judgment of invalidity, in addition to both parties' failure to definitively demonstrate what is or is not well known to persons of ordinary skill in the art. The cross-motions for summary judgment as to invalidity for lack of enablement are denied.

### Invalidity for Lack of Novelty

MMMS next moves to for summary judgment on the basis that the '412 Patent is invalid under 35 U.S.C. § 102 for lack of novelty. Doc. 38. "Invalidity based upon lack of novelty (often

called 'anticipation') requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee." *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995); *see Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 ("[T]his court has long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*.'") (emphasis in original) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)). A patent is presumed valid, *see* 35 U.S.C. §282, and one who challenges a patent's validity must prove its invalidity by clear and convincing evidence. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999). Further, anticipation is a question of fact, so summary judgment on the question of invalidity is inappropriate if a trier of fact applying the clear and convincing standard could find for either party. *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999); *see Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). Stated differently, MMMS is entitled to summary judgment on the question of anticipation only if no reasonable jury could find anything other than that MMMS had carried its burden of showing the '412 Patent's lack of novelty by clear and convincing evidence. *Id.*; *see Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (noting that summary judgment in favor of the party bearing the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact").

Here, MMMS' motion challenges the validity of the '412 Patent for lack of novelty solely on the basis that the subject matter of Claims 1, 9, and 17 were previously disclosed by U.S. Patent No. 4,071,234 to Schick (the "Schick Patent"). Doc. 38, at 15–19. The Schick Patent, which discloses a "High Performance Sheet-Feeder Mechanism," was not cited in Glowner's patent application and was not considered by the claims examiner before allowance of the '412

Patent. MMMS submits that Exhibit B to the Declaration of Robert Erbstein (Doc. 35, Ex. 3) provides clear and convincing evidence of the '412 Patent's invalidity. Exhibit B consists of a claim chart comparing the elements of the '412 Patent to the Schick Patent. It is far more detailed than the elements of the Erbstein Report that Glowner attacked in his previous motion to strike. According to the claims chart and the color-coded figures attached thereto, the Schick Patent discloses all of the elements of the '412 Patent, including an "insert feeding assembly," a "supporting means for supporting a stack of inserts," a "converting means for converting the stack of inserts into an overlapping stream of inserts with a lap roller assembly that guides each insert down into the overlapping stream of inserts," a "conveying means for conveying the overlapping stream through the feeding assembly," and a "separating and ejecting means for separating individual inserts from the overlapping stream of inserts and ejecting separated individual inserts from the feeding assembly."

Glowner responds that Schick Patent does not anticipate the '412 Patent because the Schick Patent discloses an invention that cannot be used to handle "inserts." The Court cannot agree. As MMMS aptly points out, the Schick Patent "relates to a feeder mechanism for single or folded sheets of paper or similar flexible sheets," Schick Patent, col. 1, ll. 6–7, and such feeder mechanisms are used in insertion machinery to "insert[] advertising copy into newspapers," Schick Patent, col. 2, ll. 29–30. Though the '412 Patent might seem best fit for inserts consisting of multiple pages folded together, nothing in the '412 Patent limits "inserts" to two or more pages. Thus, there is no question that the Schick Patent can act upon the very same type of inserts that the '412 Patent envisions. It is perhaps for this reason that, in his response to MMMS' Motion for Summary Judgment as to Invalidity, Glowner does not assert that the

Schick Patent cannot be used to handle inserts, and implicitly concedes the point. Doc. 44, at 8–12.

Glowner next argues that summary judgment is inappropriate because the Schick Patent does not contain the "lap roller assembly that guides each insert down into the overlapping stream of inserts" that is so central to the '412 Patent. The Schick Patent does disclose a preferred embodiment in which "an upper corner on each of the conveyor wheels (12) engages the upper edge of the sheet and thus pulls the bent sheet over the reversing roller (9) in the downward direction until it is pinched between the conveyor wheels and the reversing roller and is gradually pulled further out of the stack." Schick Patent, col. 4, ll. 21–27. Essentially, Glowner posits that, because Schick's version of the "lap roller" (the "conveyor wheel") only guides a sheet downward *until* it is pinched by the conveyor wheel and the reversing roller, after which it moves in a horizontal or clockwise direction, Schick does not disclose a lap roller that guides inserts *down into an overlapping stream*. In support of its assertion, Glowner points to the original Howard Report as well as Dr. Howard's Rebuttal Report, which claims that "the Schick invention . . . does not guide each insert *down* into an overlapping stream. Instead, it guides sheets of paper in a diagonal direction (neither vertical nor horizontal). Doc. 44, Ex. F, at 7 (emphasis in original).

Though the question is a close one, the Court believes that the presence of conflicting expert testimony requires the submission of this particular issue to the jury for resolution. *See Hunt*, 526 U.S. at 553. That may not have been so in the absence of the "clear and convincing evidence" standard of proof, layered on top of the fact that MMMS already bears the burden of demonstrating that the presumably valid '412 Patent is in fact invalid for lack of novelty. But such a factual issue, which involves comparing the inventions contemplated by the Schick and

17

the '412 Patents, and the specific determination of whether Schick discloses a lap roller mechanism that guides downward into the overlapping stream, is at this juncture sufficient to preclude the entry of summary judgment.

Finally, there is one more factual issue that forecloses the entry of summary judgment as to invalidity for lack of novelty at this stage of the proceedings. Claim 9 of the '412 Patent describes "a converting assembly adjacent to the insert supporting assembly, where the converting assembly uses a lap roller assembly configured to guide each insert down into an overlapping stream of inserts," '412 Patent, col. 9, l. 66–col. 10, l. 2. In addition, Claim 9 contains "a conveying assembly adjacent to the converting assembly." '412 Patent, col. 10, ll. 3–4. Glowner correctly points out that a factual issue exists as to whether the Schick Patent, which seems to collapse the converting and conveying assemblies into the same mechanism, reads on the '412 Patent's inherent requirement that the "converting" and "conveying" assemblies be separate from, and literally adjacent to, one another. Doc. 44, at 10; Doc. 44, Ex. F, at 7. Though MMMS' response—that the conveyor belt of the Schick Patent is at times acting as part of the converting assembly, and at others acting as part of the conveying assembly—has some appeal, the Court is mindful of the fact that MMMS carries the heavy burden of demonstrating the '412 Patent's invalidity by clear and convincing evidence. Whatever can be said of the evidence and arguments proffered by the parties on this point, it is plain that MMMS has not made such a showing that no reasonable jury could find Claim 9 of the '412 Patent to be valid. MMMS' motion for summary judgment as to invalidity for lack of novelty must accordingly fail. *See Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582, 586 (Fed. Cir. 2004).

## Non-Infringement

Determining whether an accused device infringes a Untied States patent is a two-step process. The court must first determine the proper scope of the asserted claims, and then compare the construed claims to the allegedly infringing device. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1312. Having properly construed the single disputed term in the '412 Patent above, only the factual inquiry of applying the asserted claims to the XL Feeder remains. "Summary judgment on the issue of infringement [or non-infringement] is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). Thus, and because Glowner will ultimately the bear the burden at trial of demonstrating that the XL Feeder infringes on his '412 Patent, he must demonstrate the existence of a factual issue as to infringement that precludes the entry of summary judgment. *Celotex*, 477 U.S. at 325.

MMMS' Motion for Summary Judgment argues that the XL Feeder does not contain an "overlapping stream" and that it therefore does not literally infringe upon the '412 Patent. This Court has previously defined "overlapping stream" to describe inserts which (1) physically overlap and (2) move continuously through the feeding assembly. MMMS argues that, because the '412 Patent requires "an overlapping stream of inserts with a lap roller assembly that guides each insert down into the overlapping stream of inserts," the XL Feeder cannot infringe upon the '412 Patent. It claims that after an insert in the XL Feeder is acted upon by the pusher (the XL Feeder's version of a "lap roller"), the inserts are singulated and not part of an overlapping stream. Glowner counters that the overlapping stream in the XL Feeder occurs when a leading insert is being guided down by the pusher and a trailing insert is being pulled out of the stack of

inserts, and supports its assertion with Dr. Howard's testimony and report. Doc. 43, at 12; *see* Howard Report, Doc. 43, Ex. H, at 13–16 (demonstrating Plaintiff's version of the overlapping stream in the XL Feeder); Howard Dep., Doc. 43, Ex. J., at 181–192. Not to be outdone, MMMS points to its own Erbstein Report for the proposition that the there is no overlapping stream in the XL Feeder, that the inserts are removed one at a time from the stack of inserts with the XL Feeder, and that the inserts being removed from the stack of inserts in the XL Feeder have not begun transport and thus cannot be deemed part of any overlapping stream. Doc. 35.

Whether or not the XL Feeder creates an overlapping stream, and whether the pusher system in the XL Feeder is in effect a "lap roller assembly that guides each insert down into the overlapping stream of inserts" is a question of fact for the jury. MMMS suggests that because the lap roller guides each insert "down into" the overlapping stream of inserts, the XL Feeder cannot infringe because it does not create an overlapping stream *downstream* of the pusher. Even assuming that the importance MMMS attaches to the "down into" phrase is warranted, this argument is still unpersuasive. After all, Glowner heavily disputes the notion that the XL Feeder does not contain an overlapping stream downstream from the pusher, and the expert testimony of Dr. Howard that Glowner proffers in support of his contentions is alone sufficient to create a triable issue of material fact on this question. "To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant." *Intell. Sci. and Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009). The Howard Report includes ample detail concerning its analysis and the bases for its conclusions to preclude summary judgment. In fact, on the particular

question of the overlapping stream, the Howard Report provides not only textual analysis, but also photographs specifically explaining Dr. Howard's theory of how the XL Feeder guides inserts down into an overlapping stream. Whether or not the jury agrees with Dr. Howard's theory when it views the XL Feeder in operation is a question susceptible of different interpretations. It may well decide that the XL Feeder does not contain a lap roller that guides inserts down into an overlapping stream of inserts. But if it does, it will do so at trial. For this Court to answer such issues at this stage of the proceedings would be to aggrandize itself at the expense of the jury's role as factfinder in this case. That the Court will not—and indeed cannot—do.

Having found that there exists a genuine issue of material fact as to whether the XL Feeder literally infringes the '412 Patent, the Court need not go further. The question of whether prosecution history estoppel precludes Glowner from proving infringement under the doctrine of equivalents hinges on whether the jury believes the XL Feeder literally infringes the '412 Patent's element of a "lap roller assembly that guides each insert down into the overlapping stream of inserts." After all, that very same language was added to the '412 Patent in response to the examiner's rejection, so the questions of whether the XL Feeder literally infringes upon this particular element of the '412 Patent and whether prosecution history estoppel bars Glowner from pursuing an infringement claim under the doctrine of equivalents with regard to the "lap roller assembly that guides each insert down into the overlapping stream of inserts" are, in fact, one and the same. *See Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1304 (Fed. Cir. 2001) ("[W]hen application of the doctrine of equivalents to a limitation is completely barred due to prosecution history estoppel, a patentee asserting infringement must show by a preponderance of the evidence that an allegedly infringing device literally reads on that

limitation as properly construed."). At any rate, the existence of the genuine issue of material fact as to whether the XL Feeder literally infringes the '412 Patent precludes summary judgment as to infringement, and this motion, too, is denied. Accordingly, it is

**ORDERED** that Plaintiff Dwayne Glowner's Motion to Strike the Expert Report of Mr. Robert Erbstein (Doc. 34) and Motion for Partial Summary Judgment as to Defendant's Counterclaim of Invalidity for Lack of Enablement (Doc. 33) are **DENIED**. Additionally, Defendant's Motions for Summary Judgment of Non-Infringement (Doc. 35) and Patent Invalidity (Doc. 38) are also **DENIED**. Both parties have requested a trial by jury. The Court will set that trial by separate notice.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 3/5th of January, 2012.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.