**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DWAYNE GLOWNER,

      Plaintiff,

v.

MULLER-MARTINI MAILROOM
SYSTEMS, INC.,

      Defendant.

Case No. 8:09-cv-01768-TGW

<u>**DEFENDANT MULLER MARTINI MAILROOM SYSTEMS, INC.'S**
**MOTION FOR JUDGMENT OF NO WILLFULNESS AND MOTION TO EXCLUDE**
**ARGUMENT OR EVIDENCE RELATING TO WILLFULNESS**</u>

## Table of Contents

Page

I.       Introduction ...................................................................................................... 1

II.      Legal Standard ................................................................................................. 2

III.     Glowner Cannot Show Willfulness. ................................................................ 4

    A.    Muller Has Presented Credible Invalidity Claims .................................. 4

        1.    *Judge Kovachevich Found That the Question of Invalidity Was "a Close One"* ................................................................................. 4

        2.    *The '412 Patent Is Anticipated by Schick* .................................. 4

        3.    *The '412 Patent Is Obvious in Light of at Least Schick Plus Brooks* ......... 7

        4.    *The '412 Patent Is Not Enabled* ................................................. 9

    B.    Muller Has Presented Equally Strong Noninfringement Defenses ....................... 10

        1.    *The Muller XL Feeder Does Not Have an Overlapping Stream of Inserts* ............................................................................. 10

        2.    *The Muller XL Feeder Contains No Conveyor for the Overlapping Stream* ............................................................... 11

        3.    *The Muller XL Feeder Does Not Separate and Eject Single Inserts from the Overlapping Stream.* ............................................. 12

    C.    Any of These Defenses Demonstrate That the First Prong Cannot Be Met and That the Willfulness Argument Should Be Excluded from Trial. ................. 12

IV.      Conclusion ...................................................................................................... 13

## I.    __INTRODUCTION__

Defendant Muller Martini Mailroom Systems, Inc. ("Muller") moves for judgment on the issue of willful infringement of U.S. Patent No. 6,755,412 B1, entitled "High Speed Overlapping Insert Feeding Assembly" ("the '412 patent").  Plaintiff Dwayne Glowner ("Glowner") asserts that Muller willfully infringed the '412 patent.

As the Federal Circuit clarified last month, the threshold inquiry in a willful infringement analysis is a question of law that this Court — not a jury — must determine.  Glowner bears the burden of proof and must demonstrate by clear and convincing evidence that Muller acted despite an objectively high likelihood that the accused actions constituted infringement of a valid patent.  If this threshold inquiry is not demonstrated, then the second willfulness prong cannot be considered by the jury.  Thus, this issue is appropriately considered at this time.

To meet this high threshold, plaintiff must demonstrate by clear and convincing evidence that defendant has no reasonable invalidity or noninfringement defenses.  But here that is simply not the case.   Muller has presented numerous legitimate and credible invalidity and non-infringement arguments with respect to the '412 patent.  These defenses clearly demonstrate that the threshold objective prong to establish willful infringement cannot be met.  In fact, ruling on Muller's motion for summary judgment on invalidity, Judge Kovachevich found that Muller's invalidity defense was at least reasonable when she stated that the question was "a close one."[1] In light of this finding alone, Glowner cannot clearly and convincingly demonstrate that Muller had no reasonable invalidity or noninfringement defenses.  Without such a showing there can be no demonstration of willful infringement.

---

[1] Judge Kovachevich also denied Glowner's own motion for partial summary judgment on Muller's defense of nonenablement, evidently finding that Muller's invalidity defense, at the very least, was reasonable and an issue for the jury.

Accordingly, Muller requests that this Court enter judgment of no willful infringement and exclude argument or evidence with respect to willfulness during trial.

## II. <u>LEGAL STANDARD</u>

To establish willful infringement a patentee must satisfy a two-pronged test. *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id*. This objective determination

> entails an objective assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity that are not necessarily dependent on the factual circumstances of the particular party accused of infringement.

*Bard Peripheral Vascular, Inc. v. Gore*, 682 F.3d 1003, 1006 (Fed. Cir. 2012). The state of mind of the alleged infringer is irrelevant to this objective inquiry. *Seagate*, 497 F.3d at 1371.

Generally, the "objective prong of *Seagate* is not met where an accused infringer relies on a reasonable defense to a charge of infringement." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1336-37 (Fed. Cir. 2009) (holding that the district court correctly granted JMOL of no willfulness where defendant "presented a substantial question" of noninfringement under the doctrine of equivalents, even though the jury found equivalence). Either legitimate defenses to infringement claims or credible invalidity arguments demonstrate the lack of an objectively high likelihood of willful infringement and the failure to meet the threshold inquiry. *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008); *Cohesive Techs., Inc. v. Waters Co*rp., 497 F.3d 1360, 1374 (Fed. Cir. 2008) (noninfringement defense demonstrated no objectively high likelihood that defendant's

actions constituted infringement).   Thus, the question is whether the asserted defense is "reasonable."   *See, e.g., Powell v. Home Depot U.S.A., Inc*., 663 F.3d 1221, 1236 (Fed.Cir. 2011).

If the threshold objective standard is satisfied, then the patentee must also demonstrate that the objectively high likelihood "was either known or so obvious that it should have been known to the accused infringer."   *Seagate*, 497 F.3d at 1371.   But if the threshold inquiry is not met, the second prong is not considered.   *Bard*, 682 F.3d at 1006; *Powell*, 663 F.3d at 1236 (patentee must "prove the objective prong of the willful infringement inquiry by clear and convincing evidence *as a predicate* to the jury's consideration of the subjective prong." (emphasis added)) (citing *DePuy Spine Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1335–37 (Fed. Cir. 2009) (declining to address the subjective prong when the objective prong had not been established)).

Last month, the Federal Circuit held that the threshold objective prong of Seagate is a legal question which "should always be decided as a matter of law by the judge."   *Bard*, 682 F.3d at 1008.   Likening the issue to claim construction, where the Court must construe the claims before submitting the infringement analysis to the jury, the Federal Circuit held "that the court is in the best position for making the determination of reasonableness."   *Id*. at 1006-07.

Thus the Judge — prior to submission of the willfulness claim to the jury — must determine if there is objective recklessness by objectively assessing the defenses put forth by defendant.   *Id*.   "Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong."   *Powell*, 663 F.3d at 1236.

III.     **GLOWNER CANNOT SHOW WILLFULNESS.**

Glowner cannot show by clear and convincing evidence that Muller acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. As set out in Muller's motions for summary judgment (D.I. 35 and 38) and Muller's Trial Brief (D.I. 75), Muller presents reasonable and legitimate non-infringement and invalidity arguments and thus the objective prong is not met. Accordingly, willful infringement cannot be found.

      A.     **Muller Has Presented Credible Invalidity Claims**

           1.     *Judge Kovachevich Found That the Question of Invalidity Was "a Close One"*

The Court, in examining numerous of Muller's defenses at the summary judgment stage of these proceedings, has already indicated that Muller's invalidity defenses are at the very least reasonable. In ruling on Muller's motion for partial summary judgment of invalidity of the '412 patent, Judge Kovachevich found that the question of invalidity was "a close one" but ruled that the question should go to the jury. (D.I. 48, Court Order, denying Motion for Partial Summary Judgment, at 17.) Further, the Court went on to deny Glowner's motion for partial summary judgment on Muller's Counterclaim of Invalidity for Lack of Enablement, finding that the expert testimony, including by Muller's experts, was "detailed in nature and more than sufficient to raise a genuine issue of material fact as to invalidity." (D.I. 48, Court Order, at 14.)

In light of the Court's findings and rulings, Muller's invalidity claims are unmistakably reasonable and Glowner cannot demonstrate willfulness.

           2.     *The '412 Patent Is Anticipated by Schick*

Claims 1, 9 and 17 of the '412 patent fail to satisfy the "novelty" requirement under § 102, in view of U.S. Patent No. 4,071,234 to Schick ("Schick") (D.I. 35-4, Ex. 2 to Muller's Motion for Summary Judgment), which is prior art under §102(a) or §102(b). At the very least,

Schick presents a reasonable invalidity defense and defeats Glowner's ability to establish the threshold objective prong for willfulness.

a.   Schick Discloses the Use of an Insert Feeding Assembly with a Supporting Means and Assembly for Supporting a Stack of Inserts

Schick relates to insert-feeding assemblies, and specifically to a mechanism for feeding "single sheets, folios or multiple-ply material of paper or the like" and "folded sheets of paper". (D.I. 35-4, Schick Abstract, at 1; col. 1, ll. 6-7).  Schick also states that the feeder is a "rapidly running insertion machine," can be used in "newspaper processing," and that a prototype of the feeder "has already achieved operating speeds of 40,000 items per hour".  (*Id.*, col. 3, ll. 13-18). Schick discloses a support for a stack of inserts that is "partially tilted" (*Id*, Abstract at 1; col. 2, ll. 46, 50, etc.)  This is the same as the stack of inserts in the '412 patent, which explains that the stack in the '412 patent claims can be "tilted".   (D.I. 35-3, Ex. 1 to Muller's Motion for Summary Judgment, '412 patent, col. 4, l. 3).   Thus this limitation is disclosed and met in Schick.

b.   Schick Discloses a Converting Means and Assembly for Converting a Stack of Inserts into an Overlapping Stream of Inserts with a Lap Roller Assembly that Guides Each Insert down into the Overlapping Stream of Inserts

Similarly, Schick discloses converting a stack of inserts into an overlapping stream. To remove items from the stack, Schick uses "a pair of suction devices … for preliminary separation of an individual item in the stack" combined with "a conveyor wheel [12] with several recesses". (D.I. 35-4, Schick, col. 2, ll. 48-49).  This conveyer wheel is a lap roller assembly, and performs the same function as that identified in Glowner's '412 patent.  The suction devices and lap roller assembly convert the stack of inserts into an overlapping stream using conveyor wheels, "result[ing] in a staggered array of the individual items taken from the stack[.]"  (*Id.*, col. 4, ll. 34-36; Fig. 1.)

- 5 -

The '412 patent's claim limitation of a "converting means [assembly] for converting the stack of inserts into an overlapping stream of inserts with a lap roller assembly that guides each insert down into the overlapping stream of inserts" falls squarely within this disclosure in Schick. As seen in Schick, the inserts are turned down into an overlapping stream just as in the '412 patent[2]:



The inserts are turned down into an overlapping stream just as in the '412 patent. *FIG. 10*   FIG. 1

Schick discloses preparing a second insert for removal from the stack occurs before the first insert has been completely removed by its conveyor wheels (the lap roller assembly). (*See e.g. id.*, col. 2, ll. 51-56, and Figs. 1 and 2). The lap roller assembly in Schick removes a sheet, and before a sheet is entirely removed, the suction cup assembly simultaneously starts to separate the next sheet in the stack. This feature is clearly shown in Schick as part of its converting

---

[2] Nothing in the '412 patent suggest that this "downward" motion must be straight down or continue straight down so as to be at a 90 degree angle to the floor, or that the overlapping stream cannot straighten out while moving in an overlapping stream along the conveying means or assembly.

assembly.  (*See* D.I. 35-5, Ex. 3 to Muller Motion for Summary Judgment, Erbstein Dec., Ex. B at 2.)

> c.      Schick Discloses a Means for Conveying the Overlapping Stream
>         Through the Feeding Assembly

Schick also discloses the use of a conveyor for conveying an overlapping stream.  As described in Schick, after the items leave contact with the conveyor wheels (12), they are conveyed by conveyor belts (10) as shown in Fig. 1.  (D.I. 35-4, Schick, col. 3 ll. 58-50).  The conveyor in Schick falls within in the "conveying means [assembly] for conveying the overlapping stream through the feeding assembly" limitation in the '412 patent.

> d.      Schick Discloses an Overlapping Stream Separating and Ejecting
>         Means and Assembly for Separating Individual Inserts and for
>         Ejecting the Separated Inserts from the Feeding Assembly

Finally, Schick discloses means for separating the overlapping stream into single inserts.  At the end of the conveyor belts, the individual items are then "pulled further apart by the accelerator rollers 15 cooperating with their counter-rollers 16." (D.I. 35-4, Schick, col. 4, ll. 36-38).  (*See also*, col. 2, ll. 56-58:  "[a] complete singulization then takes place by subsequent accelerator mechanisms.")   This mechanism also falls squarely within the claim limitation "overlapping stream separating and ejecting means for separating individual inserts from the overlapping stream of inserts and for ejecting separated individual inserts from the feeding assembly." (D.I. 35-3, '412 patent, claim 1.)

Thus, each limitation of claims 1, 9, and 17 of the '412 patent are disclosed by Schick and the '412 patent is invalid as not novel.

> 3.      *The '412 Patent Is Obvious in Light of at Least Schick Plus Brooks*

Claims 1, 9 and 17 of the '412 patent are also invalid as obvious.  There are a number of combinations of prior art that would render these claims obvious.  One such obviousness

combination is Schick in view of U.S. Patent No. 1,504,862 to Brooks ("Brooks").  At the very least, Muller presents a reasonable and credible defense of obviousness and thus the threshold inquiry for willful infringement is not met.

As explained above, every limitation in the asserted claims is present in Schick.  Glowner has argued that Schick does not disclose the limitation of guiding "each insert down into the overlapping stream of inserts."  As explained above, this Court found that whether Schick discloses this limitation was a close question.  (D.I. 48, Court Order, at 17.)  While Muller firmly believes that this limitation is disclosed in Schick, it is certainly disclosed in Brooks.  (*See, e.g.,* D.I. 37-4, Ex. 16 to Muller's Motion for Summary Judgment, Brooks, col. 2, ll. 69-71.)  The '412 patent would be obvious in light of Schick and Brooks.

Brooks, like Schick, discloses the very features argued by Glowner to be missing from the prior art in front of the Patent Examiner — that is that the "lap roller assembly guides each insert down into the overlapping stream of inserts."  (Compare D.I. 37-4, Brooks, col. 2, ll. 69-71 with D.I. 37-1, Ex. 13 to Muller's Motion for Summary Judgment, August 27, 2003 *Response to Office Action*, at 35-37.)  And, like Schick, Brooks discloses the feature touted by Glowner of separating the next sheet from the stack before the first sheet has been removed.  (*Id.*, col. 1, ll. 55-61.)

Brooks clearly discloses that the blanks are "gripped and transferred downwardly."  (*Id.*, col. 2, ll. 69-70.)  Figure 1 of Brooks also clearly discloses this feature:



*Fig. 1.*

A person of ordinary skill in the art would have known that Schick could be combined with Brooks to arrive at the claimed invention. Thus, the '412 patent is obvious.

### 4. *The '412 Patent Is Not Enabled*

A patent claim is also invalid if the specification of the patent does not provide all "enabling disclosure" of the full-scope of the claim, sufficient for one skilled in the art to make use the invention in all of its various forms. (35 U.S.C. §112.) The specification must teach those skilled in the art how to make and use the full scope of the claimed invention without "undue experimentation". *In re Wright*, 999 F. 2d 1557, 1561 (Fed. Cir 1993).

Glowner is asserting an unduly-broad scope for the claims, in an attempt to capture devices not disclosed or enabled. However, Glowner cannot have it both ways — if Glowner asserts that the '412 patent disclosed the Muller XL Feeder, it must show that the '412 patent meets the enablement requirements of 35 U.S.C. §112. Glowner cannot do so.

The Court denied Glowner's motion for partial summary judgment on Muller's counterclaim of nonenablement and failure to comply with 35 U.S.C. § 112. The Court noted that summary judgment in Glowner's favor was appropriate if he could "demonstrate that MMMS 'failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent,' which here is lack of enablement."

(Court Order, D.I. 48 at 12-13.)  Because the Court denied Glowner's motion, and found there were questions of fact for the jury that would preclude Glowner's motion, the Court must have found that Muller had a reasonable claim of invalidity based on nonenablement.  Consequently, Glowner cannot meet its burden of proof for willful infringement.

### B.   Muller Has Presented Equally Strong Noninfringement Defenses

In addition to its invalidity defenses, Muller presents legitimate noninfringement defenses which preclude a finding of willful infringement.  The Muller XL Feeder does not infringe on the '412 patent because the Muller XL Feeder does not contain a number of the requisite limitations of the asserted claims.  Notably, Glowner has never argued that there is no reasonable basis for Muller's noninfringement defenses.  Glowner never moved for summary judgment on the issue of infringement or argued that Muller failed to present a legitimate noninfringement defense.

### 1.   *The Muller XL Feeder Does Not Have an Overlapping Stream of Inserts*

The '412 patent requires that during the feeding process, the stack of inserts be "converted" into an "overlapping stream", and that the "overlapping stream" be conveyed through the machine before being separated into individual inserts and ejected from the machine. The Court previously construed the term "overlapping stream" to describe "inserts which (1) physically overlap and (2) move continuously through the feeding assembly."  (D.I. 48, Court Order, at 11.)  Muller's XL Feeder does not have, among other things, this overlapping stream.

The accused Muller XL Feeder does not convert inserts into, convey, or separate from an overlapping stream.  Perhaps recognizing this — and in a manner completely inconsistent with this Court's claim construction, the '412 patent claims and specification, and his own statements before the USPTO — Glowner appears to argue that "overlapping" can occur when an insert is queued for processing within the stack of inserts prior to another insert being completely ejected from the feeder.  Such a position is completely at odds with Glowner's claim that he invented

something novel using "overlapping" inserts to create a faster feeder. All feeders that withdraw inserts from a stack perform the very function Glowner now claims is "overlapping". Nowhere does the '412 patent or the '412 patent file history support such a strained reading. Further, Glowner ignores that the required conveying of these overlapping inserts feature is completely absent from Muller's XL Feeder. The Muller XL Feeder neither employs nor conveys an "overlapping stream" of inserts.

The asserted claims require not only that an "overlapping stream" be present, but also, that a lap roller assembly is the mechanism which conveys the inserts "into" an overlapping stream. Thus the "overlapping stream" must be present *after* the inserts pass through the lap roller assembly. In addition, because the asserted claims include the limitation "down", the "overlapping stream" must be located "down" from the lap roller assembly in order to literally infringe. However, the accused XL Feeder simply does not have an "overlapping stream" down from a lap roller (or anywhere, for that matter) (*see*, *e.g.*, D.I. 35, Muller's Motions for Summary Judgment of Noninfringement, at 8-10), and accordingly, does not literally infringe. Glowner does not even attempt to argue that the Muller XL Feeder contains this requirement, but rather impermissibly reads this limitation out of the claims. Such vitiation of a claim limitation — and particularly, a claim limitation added in order to avoid invalidation over prior art — is not permitted under the patent laws. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006) (infringement theories that would read a limitation completely out of the claim — "i.e., the limitation would be effectively removed or 'vitiated'" — are impermissible).

       2.    *The Muller XL Feeder Contains No Conveyor for the Overlapping Stream*

Further, the Muller XL Feeder does not have a conveyor means or conveyor assembly that conveys the overlapping stream. The Muller XL Feeder does not have the "a series of

belts that hold and convey the overlapping stream of inserts through the feeder from the converting means to the separating and ejecting means" as described in the '412 patent. (*See*, *e.g*., D.I. 35, Muller's Motion for Summary Judgment of Noninfringement, at 17-18). And the Muller XL Feeder contains no equivalent structure that performs the identical function recited in the means-plus-function claim, in substantially the same way, to reach substantially the same result. Thus, the Muller XL Feeder cannot infringe the '412 patent for this additional reason.

> 3.    *The Muller XL Feeder Does Not Separate and Eject Single Inserts from the Overlapping Stream.*

Similarly, the Muller XL Feeder does not have a "separating and ejecting" means or assembly to separate and singulate inserts from an overlapping stream, as claimed in the asserted claims. The Muller XL Feeder does not need such a feature because it never conveys inserts *down into an overlapping stream*. Rather, as clearly shown, the Muller XL feeder removes inserts from a stack and transfers them to their pockets below one by one, in a singulated fashion. (D.I. 35, Muller's Motions for Summary Judgment of Noninfringement, at 18).

Because it is missing multiple limitations included in each of the claims at issue, the Muller XL Feeder does not infringe. At the very least, these missing limitations create a reasonable and legitimate defense of noninfringement and thus Glowner cannot meet its high burden of proof to establish willful infringement

**C.    Any of These Defenses Demonstrate That the First Prong Cannot Be Met and That the Willfulness Argument Should Be Excluded from Trial.**

If the Court finds that Glowner has not demonstrated by clear and convincing evidence that each and every one of these defense are unreasonable, Glowner's willful infringement claim does not go to the jury, but instead fails at the threshold inquiry. Because the threshold inquiry is not met, it is irrelevant that Glowner cannot also demonstrate that Muller knew or should have

known that its actions were infringing a valid patent.[3]  The Federal Circuit is clear that the first objective prong is a threshold inquiry and the second subjective prong is not considered if the first prong is not met. *Bard*, 682 F.3d at 1006; *Powell*, 663 F.3d at 1236.

To meet his high burden of proof, Glowner must show that none of these defense is reasonable.  He cannot.  The Court should enter judgment of no willful infringement.  To allow the issue of willful infringement to proceed at trial would run contrary to Federal Circuit law, unnecessarily complicate trial, and further lead to jury confusion and unfair prejudice. Therefore, the Court should additionally order that Glowner make no reference to willful infringement at trial.

## IV.   <u>CONCLUSION</u>

For at least the reasons set forth above, Muller requests that this Court find that Glowner has not met the threshold inquiry of willfulness and enter judgment of no willful infringement.

---

[3] In fact, Glowner cannot prove the second element either.  Among other things, Muller sought and obtained an opinion of counsel with respect to the '412 patent.  The opinion stated that, because Muller's XL Feeder did not have an overlapping stream of inserts, it did not infringe the '412 patent.  But again, Glowner's inability to establish the second, subjective element of the willfulness claim need not be considered by the Court, given Glowner's failure to establish the first, objective element.

Dated:  July 18, 2012                    Respectfully submitted,


                                          _s/ *Stephen M. Hankins*_____
                                         Stephen M. Hankins
                                         California Bar No. 154886
                                         Alison Maddeford
                                         California Bar No. 248523
                                         SCHIFF HARDIN LLP
                                         One Market, Spear Street Tower
                                         32nd Floor
                                         San Francisco, CA 94105
                                         Telephone:  415-901-8700
                                         Facsimile:  415-901-8701
                                         Email:  shankins@schiffhardin.com
                                         Email:  amaddeford@schiffhardin.com


                                         Thomas P. Battistoni
                                         New York Bar No. 2019883
                                         Henry Behnen
                                         New York Bar No. 4890125
                                         SCHIFF HARDIN LLP
                                         666 Fifth Avenue
                                         17th Floor
                                         New York, NY 10103
                                         Telephone:  212.753.5000
                                         Facsimile:  212.753.5044
                                         Email:  tbattistoni@schiffhardin.com
                                         Email:  hbehnen@schiffhardin.com


                                         Stefan V. Stein
                                         Florida Bar No. 300527
                                         GRAY ROBINSON, P.A.
                                         201 N. Franklin Street
                                         Suite 2200
                                         Tampa, Florida 33602
                                         Telephone:  813-273-5000
                                         Facsimile:  813-273-5145
                                         Email:  stefan.stein@gray-robinson.com


                                         *Attorneys for Defendant Muller-Martini*
                                         *Mailroom Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by filing the above with the Court's  CM/ECF electronic filing system this 18th day of July, 2012.

_s/ *Stephen M. Hankins*_____
Stephen M. Hankins