IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| DWAYNE GLOWNER, | &#124; |
| | &#124; |
| Plaintiff, | &#124;  Case No. 8:09-cv-01768-EAK-TGW |
| | &#124; |
| v. | &#124; |
| | &#124; |
| MULLER MARTINI MAILROOM SYSTEMS, INC., | &#124; |
| | &#124; |
| Defendant. | &#124; |

## PLAINTIFF'S MOTIONS *IN LIMINE* TO EXCLUDE DEFENDANT'S EXPERT, ROBERT S. ERBSTEIN FROM TESTIFYING AT TRIAL

### I.  INTRODUCTION

Muller has proffered Mr. Robert S. Erbstein as an expert on non-infringement and invalidity as to U.S. Patent No. 6,755,412 ("the '412 Patent") entitled "High Speed Overlapping Insert Feeding Assembly."[1] Because his expert reports and deposition testimony have revealed that there is no sufficient basis for his opinions, in whole or in part, Plaintiff requests an order excluding his testimony completely or, at the very least, in part.

### II.  FACTS

On April 11, 2012, Mr. Erbstein submitted an initial expert report on non-infringement and invalidity of the '412 Patent. *See* Expert Report of Robert S. Erbstein at ¶1 ("Erbstein

---

[1] On June 14, 2011, Plaintiff filed a Motion to Strike Mr. Erbstein's expert report, *See* Dkt. No. 34, on grounds identical to those expressed in Motion *in Limine* No. 1 disclosed herein. In Its order on Plaintiff's Motion to Strike, the court stated that "it does not inexorably follow from the fact that certain portions of the Report are lacking that the entire Report must be stricken," *See* Dkt. No. 48 at p. 5, but acknowledged that "various portions of the Erbstein Report merely 'restate [the] position' of MMMS with regard to infringement and invalidity of the '412 Patent." See Dkt. No. 48 at p. 6. Further, the Court has stated that it will "assess the probative value of the various sections of the Erbstein Report on an ad hoc basis as the need for them arises, giving credence to those portions that are not helpful, while taking at fair value those that are." *Id.*

1

Report" or "Report") (attached hereto as Plaintiff's Exhibit "A"). The Erbstein Report includes

26 pages of discussion, Mr. Erbstein's CV, and Exhibits A – I. Mr. Erbstein notes that he

reviewed all documents referred to in his report, including the '412 Patent and its file history,

and prior art cited therein or otherwise referred to throughout the Report. *See* Erbstein Report at

¶7. In the Report, Mr. Erbstein discloses that he was present at the inspection of the XL Feeder

that was performed by Plaintiff's expert, but that prior to writing the report he had not yet

inspected one of Mr. Glowner's inserter devices. *See* Erbstein Report at ¶7; *see also* Deposition

of Robert S. Erbstein at 28:4-20 ("Erbstein Depo.") (attached hereto as Plaintiff's Exhibit "B").

      However, later in his deposition, Mr. Erbstein admits that he reviewed and relied upon

many more documents than those that he disclosed, and he had multiple conversations with

employees of MMMS wherein he received information that he relied upon in forming his

report. See e.g. Erbstein Depo. at 93:25 – 96:4 ("Q: …You say that there's no explicit

disclosure that you had discussions with [employees of MMMS]. There's also no implicit

disclosure in your expert report, correct? A: That's correct."); Erbstein Depo. at 145:22 –

147:5 (Admission that information that Mr. Erbstein had read but not disclosed in the

depositions of Mr. Sydel (sic) and Mr. Glowner was relevant, if not paramount, to forming his

opinions in his expert report.); Erbstein Depo. at 132:16 – 133:7 (Admission that Mr. Erbstein

did not disclose reviewing any MMMS documents in his expert report and that "I guess that I

didn't realize that was a requirement in terms of disclosing every source of information where

I had learned that from.")

      Mr. Erbstein's report then provides information related to the '412 Patent and Mr.

Erbstein's understanding of patent law as relayed to him by counsel. This discussion of the

'412 patent is solely focused on the discussion of the term "overlapping stream" and

providing Mr. Erbstein's understanding of that term. See Erbstein Report at ¶¶8 – 13. After the discussion of the '412 patent, the Erbstein Report provides a discussion of the claims of infringement of the '412 patent by the XL Feeder.  In Exhibit "C" to the Erbstein Report, Mr. Erbstein's understanding of the literal infringement of the '412 Patent is summarized.   The Erbstein Report discloses that the only reason Mr. Erbstein believes that the XL Feeder does not infringe is because Mr. Erbstein does not believe that the XL Feeder contains an overlapping stream (as he defines the term). *See* Erbstein Depo. at 171:7 – 20; *see also* Erbstein Depo. at 181:19 – 182:9.

The final section of the Erbstein Report provides Mr. Erbstein's opinions regarding the validity of the '412 Patent.  The support that Mr. Erbstein provides with respect to his opinions of invalidity for anticipation or obviousness is included as Exhibit "D".  See Erbstein Report at ¶ 33("I attach as Exhibit D claim charts of the claims of the '412 Patent showing how the elements of these claims are disclosed in the prior art patents.")

However, Exhibit "D" of the Erbstein Report only provides conclusory opinions rather than any facts or basis for Mr. Erbstein's opinions.  In Exhibit "D", Mr. Erbstein provides only a chart of the claim elements of the '412 Patent with citations to figure numbers contained in the alleged prior art patent on the right hand side of the chart.

| Claims as Issued | Prior Art<br>Palkovic U.S. Patent No. 3,741,535 |
|---|---|
| **Claim 1** | |
| 1.  An insert feeding assembly, comprising: | Insert feeding assembly |
| supporting means for supporting a stack of inserts; | supporting means for supporting a stack of inserts (16) |
| converting means for converting the stack of inserts into an overlapping stream of inserts with a lap roller assembly that guides each insert down into the overlapping stream of inserts; | converting means (suction arm 50) for converting the stack of inserts (16) into an overlapping stream of inserts with a lap roller assembly (42, 44) that guides each insert down into the overlapping stream of inserts (See col. 10, lines 28 – 32); |

*See e.g.*, Erbstein Report at Exhibit "D", p. 1. Nowhere does Mr. Erbstein provide any basis or support for his opinion that each of these figure numbers in the alleged prior art disclose the claim elements of the '412 patent. *See* Erbstein Depo. at 92:24 – 93:10. This sort of description is provided for each of the claim elements for all of the patents that Mr. Erbstein relies upon to make his allegations of invalidity. Mr. Erbstein provides his conclusory opinion that each claim element is found in the prior art, but he never provides any statements as to why each of the cited figures is the same as the cited claim element. See Erbstein Report at Exhibit "D", ¶¶ 33-39.

The Erbstein Report then provides a very brief discussion regarding Mr. Erbstein's opinion that the '412 Patent is not enabled to the full scope of the asserted claims.  See Erbstein Report at ¶¶ 40–41. But nowhere in the Erbstein Report does Mr. Erbstein disclose any analysis of who "one of ordinary skill in the art" is or what qualifications they would have. *See* Erbstein Depo. at 65:21 – 66:4.  Mr. Erbstein stated that it was his belief that a person of ordinary skill could be defined as someone with the knowledge of all of the things that he states are known by someone with ordinary skill in the art. *See* Erbstein Depo. at 66:11 – 18.  Thus, Mr. Erbstein circularly defines someone of ordinary skill in the art as

being someone who knows those things which he states that someone of ordinary skill in the

art would know.

## III.    ARGUMENT

### A.  <u>Motion *in Limine* No. 1</u>: MMMS Should Be Precluded From Offering Evidence, Testimony, Attorney Argument or Other Comments Regarding the Expert Report and Related Deposition Testimony of Mr. Robert Erbstein.

Evidence produced in the report of Mr. Robert Erbstein ("Erbstein") is to be excluded on

the grounds that the report offers conclusory opinions without any factual support or basis and

fails to provide significant amounts of facts and data relied upon in forming such conclusory

opinions.  Under the Federal Rules of Civil Procedure, expert reports must disclose "a complete

statement of opinions the witness will express and the basis and reasons for them," as well as

"the facts or data considered by the witness in forming" the opinions to be expressed. Fed. R.

Civ. P. 26(a)(2)(B). The Erbstein Report and deposition testimony completely fail with regard to

both parts of the rule.

### 1.    MMMS Should Be Precluded From Offering Evidence, Testimony, Attorney Argument or Other Comments Of the Erbstein Report and Related Deposition Testimony Regarding Infringement.

An expert may testify if: "(1) the expert is qualified to testify competently regarding the

matters he intends to address; (2) the methodology by which the expert reaches his conclusions

is sufficiently reliable as determined by the sort of inquiry mandated in Daubert;  and (3) the

testimony assists the trier of fact, through the application of scientific, technical, or

specialized expertise, to understand the evidence or to determine a fact in issue." *Tuscaloosa v.*

*Harcros  Chemicals, Inc*., 158 F.3d 548, 562 (11th Cir. 1998) (citing Fed. R. Evid. 702).

Because the testimony of a testifying expert must be based upon sufficient facts or data, expert

witnesses are required to disclose what facts or data they are relying upon in their expert report.

Fed. R. Civ. P. 26(a)(2)(B). Opposing counsel is not required to depose the expert witness to find out the basis of an expert's opinion. *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 811 (D. Del. 2003).

The trial judge must act as a gatekeeper, admitting only that the expert testimony which is relevant and reliable. *Daubert v. Merrell Dow Pharmacueticals, Inc.*, 509 U.S. 579, 589 (1993). With regard to scientific knowledge, the trial court initially must determine whether the reasoning methodology used is scientifically valid and is applied properly to the facts at issue in the trial. *Id.* at 592 – 593. To aid the Court in this gatekeeping role, the Supreme Court has identified several key considerations, including whether the expert opinion can be tested; whether it has been subjected to peer review; the error rate of the methods that the expert employed; the existence and maintenance of standards used in the expert's methods; and whether the expert's methods are generally accepted in the scientific community. *Id.* at 592 – 594; *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005). The objective of *Daubert's* gatekeeping requirement is to ensure "that an expert, whether basing testimony upon professional studies or personal experience employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

With respect to infringement, Mr. Erbstein's technical opinions in the Report came not from his own knowledge and personal experience in the printing industry, but rather they were based upon undisclosed discussions with MMMS engineers, a comprehension of undisclosed user manuals, and inferences drawn from numerous patents that there is no evidences MMMS actually practices. *See* Erbstein Depo. at 139:19 – 142:22. Because the Erbstein Report relies on several different undisclosed references and sources of evidence to explain non-infringement, it

does not employ the intellectual rigor that characterizes the practice of an expert in this relevant field.

> **2.    MMMS Should Be Precluded From Offering Evidence, Testimony, Attorney Argument or Other Comments Of the Erbstein Report and Related Deposition Testimony Regarding Anticipation and Obviousness.**

In the Report, Mr. Erbstein attempts to present evidence that each claim element of at least the independent claims in the '412 Patent is invalid as anticipated or obvious in view of three prior art references that were allegedly not considered by the Examiner during prosecution. *See* Erbstein Report at ¶33. But Mr. Erbstein has admitted in his deposition that the Report does not meet the primary burden of admissibility for expert testimony – that the testimony be helpful to the finder of fact, *See* Erbstein Depo. at 196:13 – 25, meaning that before his testimony regarding invalidity can be understood by a finder of fact, it will need to be interpreted by another expert.

However, even an expert reading the Erbstein Report would not be able to decipher his basis for finding invalidity. His mere conclusory opinions that certain claim elements were present in these alleged prior art patents provide no guidance. He fails to provide any explanation as to why the figures that he referenced in the prior art were disclosures of the '412 claim elements. To him, the disclosure would be clear to any other expert. *See* Erbstein Depo. at 109:9 – 110:8; *but See* Erbstein Depo. at 110:9 – 111:3 (where Mr. Erbstein admits that his report does not provide any explanation for any expert, much less a finder of fact, to understand his opinion if the expert disagreed with his conclusory statements.)

Such a simple matching of the patent-in-suit's claim terms with referenced prior art claim elements will not assist the finder of fact and should be excluded. *See STS Software Systems, Ltd.*

*v. Witness Systems, Inc.*, 2008 WL 660325 at *2 (N.D.Ga) (Expert witness testimony on obviousness excluded when initial expert report only included summary of prior art references and citations to locations in prior art); *see also Dataquill Limited v. Handspring, Inc.*, 2003 WL 737785 at *4 (N.D.Ill.) (Striking infringement report where expert failed to state the basis and reason for why claim elements were found in accused device).

The actions by the Northern District of Georgia in *STS Software Systems* are particularly instructive. In that case, the defendant's expert witnesses provided opinions on obviousness that only included "hundreds of unsupported conclusory opinions on the allege obviousness of the Patents-in-Suit". These unsupported conclusory opinions consisted of "a list of references to prior art" that were "claim charts containing quotes excerpted from these references" and a "conclusion that a combination of references renders the patent claims obvious." STS Software Systems, Ltd. v. Witness Systems, Inc., 2008 WL 660325 at *2 (N.D.Ga).

The Erbstein Report does not even provide the level of disclosure that was rejected by the court in *STS Software Systems*. While the claim charts in *STS Software Systems* provided block quotes from the prior art for each claim element, the Erbstein Report only provides citations, by number, to the figures in the alleged prior art patents without providing any support or basis for why the cited numbers in the figures meet the claim elements. *See* Erbstein Report at Exhibit "D". Furthermore, the Erbstein Report does not consider why the combination of these elements would render the '412 Patent invalid. *Id.*

Because of the failure of the Erbstein Report to disclose the basis and support for any of its opinions regarding anticipation and obviousness, this testimony should be excluded from the jury.

3.      **MMMS Should Be Precluded From Offering Evidence, Testimony, Attorney Argument or Other Comments Of the Erbstein Report and Related Deposition Testimony Regarding Enablement.**

Mr. Erbstein's opinion on enablement of the '412 Patent should be excluded because it presents mere conclusory statements entirely unsupported in fact. The Patent Act requires that every patent must contain a written description and be enabled, as stated in 35 U.S.C. § 112 ¶1. The test for enablement is whether a person "skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) (citation omitted). Therefore, any analysis of whether a claim is enabled begins with a determination of what knowledge "one skilled in the art" would possess.

In the Report, Mr. Erbstein fails to disclose any understanding of who "one skilled in the art" would be, offering only a circular definition. *See* Erbstein Depo at 65:21 – 66:18. Mr. Erbstein's failure to disclose his perception of the knowledge and skill required of one in the art makes it difficult for anyone reading the report to assess the true value of his opinion. For example, Mr. Erbstein never addresses whether undue experimentation is necessary to practice the claimed invention. Instead, he leaps straight to the conclusion that "the Glowner patent does not teach one of ordinary skill in the art how to make and use such a structure like the MMMS XL Feeder." See Erbstein Report at ¶41. If a non-circular definition of "one skilled in the art" had been disclosed, one may assume that Mr. Erbstein didn't address undue experimentation because it was obvious in view of his disclosure of the term. But it is not the duty of counsel or the court to supply the Erbstein Report with sufficient facts for a jury to form an opinion. It is only Mr. Erbstein's duty.

9

Because Mr. Erbstein offers no factual basis in support of his legal conclusion that the asserted patent claims lack enablement as requirement by 35 U.S.C. § 112, and the court can't supply him with the information he needs to help a jury form an opinion, these opinions on enablement should be excluded from the jury.

**B. <u>Motion *in Limine* No. 2</u>: MMMS Should Be Precluded From Offering Evidence, Testimony, Attorney Argument or Other Comments Of the Erbstein Report and Related Deposition Testimony Regarding Claim Construction.**

In the section of the Erbstein Report describing the '412 Patent, Mr. Erbstein's construction of "overlapping stream" is both unsupported in fact and in contravention of a well-established doctrine of claim construction which prohibits importing limitations into claims. *See* Erbstein Report at ¶12; *see also* Erbstein Depo. at 129:21 – 130:2. The Federal Circuit has instructed judges to construe patent claims "in light of" intrinsic evidence, including the specification, but cautions against importing claim limitations from the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (highlighting the "danger" of importing claim limitations from the specification); *see also Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006) (pronouncing that the Federal Circuit "will not at any time" bring in claim limitations from the specification); and *see Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim. For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment"). There is a well-recognized tension between these two cannons of claim construction which has often created a world of confusion for judges and patent practitioners trying to distinguish them. Here, Mr. Erbstein falls prey to this deception and

misconstrues the term "overlapping stream".

In paragraph 13 of the Report, Mr. Erbstein simply points to three references of "overlap" (in varying tenses) in the specification, and with little explanation, concludes that these citations prove "overlapping stream" means exactly what he wants it to mean. *See* Erbstein Report at ¶13 ("From the above passage in col. 8, lines 10-12, the term overlapping stream as applied to inserts (or sheets, or products), means that adjacent inserts physically overlap and contact one another as they are transported and move together through the feeding assembly"). Other than simply pointing to how "overlap" is used in the specification, Mr. Erbstein provides no basis or analysis for reaching his definition of the term.

Furthermore, construing an "overlapping stream" as limited to "adjacent inserts which physically overlap and contact one another as they are transported and move together" would be inappropriate if one skilled in the art would have understood an "overlapping stream" to refer to inserts that do not physically overlap or contact one another. *See* Erbstein Report ¶13. Because Mr. Erbstein has failed to provide the foundation for his belief that his definition of "overlapping stream" is consistent with a person of ordinary skill in the art – in other words, he has not disclosed that he consulted a person of ordinary skill in the art – it is impossible to determine how he arrived at this construction. And since the only evidence in the Report of his basis are citations to phrases containing "overlap" in the specification and a statement that he "reviewed the application file history" which per se indicate that he impermissibly imported a limitation into the claims, the jury must be excluded from receiving his construction of "overlapping stream."

**C. Motion *in Limine* No. 3: MMMS Should Be Precluded From Offering Evidence, Testimony, Attorney Argument or Other Comments in the Expert Report and Related Deposition Testimony of Mr. Robert Erbstein Regarding Patents Issued Subsequent to the '412 Patent.**

In the section of the Report describing the Accused Product – the MMMS Universal Insert Feeder – Mr. Erbstein has erroneously used the 7,384,031 patent ("the '031 patent") and the 7,578,501 ("the '501 Patent") to explain the conformity of certain product features therewith. Evidence is permitted to be used if it is demonstrative, but should be excluded if it may mislead the jury or lead to speculation, by its inaccurate representation. *U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004).

Mr. Erbstein makes reference to the '031 Patent when describing the gripper system in the Accused Product, *See* Erbstein Report ¶16 ("In particular, the version of the gripper system followed conforms to a version of gripper feeder described in U.S. Patent No. 7,384,031…"), and references the '501 Patent when describing "the final phase of slowing the product down." *See* Erbstein Report ¶19 ("This is described in U.S. Patent No. 7,578,501").

These references – which are essentially comparisons – are impermissible under the rules of evidence and the procedure used to analyze infringement as its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. F.R.E. 403. Mr. Erbstein makes the bold assertion that features of the Accused Product are described in patents subsequent to the '412 Patent; and as a patent is presumed valid upon issuance, meeting all the statutory requirements of patentability including novelty, Mr. Erbstein is essentially stating that the Accused Product must necessarily not infringe the '412 patent.  However, even this conclusion was never offered by Mr. Eberstein either in his reports or deposition testimony and he should not now be permitted to offer such an opinion.

Moreover, this analysis usurps the role of the Court and will only serve to confuse the jury, permitting them, based on the assertion that the Accused Product is actually embodied in different valid patents, to come to the conclusion that there is no infringement.  The '031 Patent and the '501 Patent have not undergone claim construction which is the province of the Court; hence, the embodiment cannot fairly be stated to represent the Accused Product.  Further, the proper infringement analysis must be done by direct comparison of the '412 patent claim construction and the Accused Products, not with reference to subsequently issued patents that Mr. Erbstein deems is similar.  His description and reference to these patents can only serve to confuse the jury and impart an erroneous analysis.  Therefore, it should be excluded.

IV.    **CONCLUSION**

Mr. Erbstein's Report and deposition must indicate that he possessed the necessary supporting facts and data to form his opinions in the Report with respect to infringement and invalidity. But there was no such disclosure in the Report which would allow a fact finder to even make reasonable inferences regarding his conclusions.  As all opinions in the Erbstein Report are devoid of the necessary supporting facts or improper, the Court should give no them no credence. For the foregoing reasons, MMMS should be excluded from using any of Mr. Erbstein's conclusory opinions or testimony at trial.


Dated: July 18, 2012                          Respectfully Submitted,

                                              s/ Douglas L. Bridges
                                              Douglas L. Bridges (*admitted pro hac vice*)
                                              HENINGER GARRISON DAVIS, LLC
                                              169 Dauphin Street
                                              Mobile, AL 36605
                                              Tel: 205.326.3336
                                              Fax: 205.326.3332
                                              E-mail: dbridges@hgdlawfirm.com

13

Jacqueline Knapp Burt
Dara T. Jeffries
HENINGER GARRISON DAVIS, LLC
3350 Riverwood Pkwy SE, Suite 1900
Atlanta, GA 30339-3372
Phone: 404.996.0864
Fax: 205.547.5502
Email: jburt@hgdlawfirm.com
Email: dara@hgdlawfirm.com

Timothy C. Davis
HENINGER GARRISON DAVIS, LLC
P.O. Box 11310
Birmingham, AL 35202
Tel: 205.326.3336
Fax: 205.326.3332
E-mail: sscoggins@hgdlawfirm.com

Daniel Robert Frijouf
David Albert Frijouf
FRIJOUF, RUST & PYLE, PA
201 E. Davis Blvd.
Tampa, FL 33606
Tel: 813.254.5100
Fax: 813.254.5400
Email: frijouf@frijouf.com
Email: david@frijouf.com

*Attorneys for Plaintiff Dwayne Glowner*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2012, a true and correct copy of the above and foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system, to be served by operations of the Court's electronic filing system upon the following ECF registrants:

Stefan V. Stein
GRAY ROBINSON, P.A.
201 N. Franklin Street
Suite 2200
Tampa, Florida 33602
Telephone:  813-273-5000
Facsimile:  813-273-5145
Email:  stefan.stein@gray-robinson.com

Thomas P. Battistoni
Henry Behnen
SCHIFF HARDIN LLP
666 Fifth Avenue
17th Floor
New York, NY 10103
Tel:  ( 212) 753-5000
Fax:  ( 212) 753-5044
Email: tbattistoni@schiffhardin.com;
Email: hbehnen@schiffhardin.com

Stephen M. Hankins
Alison Maddeford
SCHIFF HARDIN LLP
One Market, Spear Street Tower
32nd Floor
San Francisco, CA 94105
Tel:  415-901-8700
Fax:  415-901-8701
Email: shankins@schiffhardin.com
Email: amaddeford@schiffhardin.com

*Attorneys for Defendant Muller-Martini*
*Mailroom Systems, Inc.*

 /s/ Douglas L. Bridges
Douglas L. Bridges

15